UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DIANE LEONE,
    Plaintiff,

v.

ELLEN WHITFORD, et al.
    Defendants.

CIVIL ACTION NO.
3-05-cv-823 (JCH)

April 17, 2007

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 38)
AND DEFENDANTS' MOTION TO STRIKE (Doc. No. 47)**

Plaintiff Diane Leone brings this action against the defendants, Ellen Whitford, Joseph Gallucci, Cora Marshall, Carl R. Lovitt, and Central Connecticut State University ("CCSU"), alleging violations of substantive and procedural due process under the Fourteenth Amendment to the United States Constitution and the Takings Clause of the Fifth Amendment. Leone also presses claims of slander and intentional infliction of emotional distress under the common law of Connecticut. Leone's claims arise from the defendants' alleged failure to grant her a teaching degree from CCSU after Leone substantially fulfilled the criteria for that degree. Leone seeks injunctive and monetary relief for the defendants' alleged violations.

The defendants have moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Leone's claims. They have also moved to strike certain of Leone's exhibits filed in support of her objection to summary judgment. For the reasons that follow, the defendants' motion for summary judgment is granted. The defendants' motion to strike is denied.

**I.    STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. BACKGROUND[1]

### A. Parties

Diane Leone attended classes at CCSU focusing on art education from Spring 1995 through Fall 2002. Whitford was the Dean of the School of Education and Professional Studies ("the School") from the summer of 2000 to the summer of 2004.

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of Leone where she provides evidence to support her allegations.

2

Gallucci was the School's Assistant Dean from July 27, 2001 to June 21, 2002. Marshall was an associate professor in CCSU's Art Department at all times relevant to this action, and he still holds that position. Miller is the current CCSU president, but was not employed by CCSU during the period that Leone attended classes at CCSU.

### B. The CCSU Teaching Program

CCSU maintained the authority to grant a Bachelor of Science ("BS") degree to any student who successfully completed all the requirements of a particular program of study. Throughout the time Leone took classes at CCSU, the School offered a teacher preparation professional program ("the Program") both to prepare students to become teachers and to allow students to apply for a state teaching certificate with the State Department of Education. Undergraduates who completed the Program's requirements were eligible to graduate with a BS.

In addition to acquiring a subject matter major, students in the Program were required to complete professional course work and fieldwork in education. In order to complete the Program and receive a recommendation for a state teaching certificate, students in the Program also had to complete student teaching. To qualify for student teaching, students had to maintain good academic standing in the Program, as well as demonstrate personal attitudes and attributes that reflect positively on their ability to teach, professional behavior appropriate to the teaching context, realization that actions reflect directly upon the status and substance of the profession, and integrity and honesty in written and verbal communication, documentation, and course work related to the Program.

Students who withdrew from student teaching after their placement began, or

3

who wished to repeat student teaching in another public school setting, were only eligible for a second student teaching placement if they obtained consent from the department of teacher education, the director of field experience, and the academic department related to the certification area sought. Decisions on whether to grant a student a second teaching placement were based on factors such as the reasons for the withdrawal from the original placement and the timing and availability of alternative placements.

The School's dean bears responsibility for reporting to the State the qualifications and suitability of candidates for a teaching certificate, including their adherence to the State's Code of Professional Responsibility for Teachers ("the Code"). The School's dean also had the authority to revoke a student's admission to the Program if the student demonstrated unprofessional behavior or an inability to respond appropriately in contexts relevant to the student's performance as a teacher, if the student performed unacceptably in student teaching, or if the student falsified or misrepresented any documentation or information provided for programmatic, academic or professional purposes. In addition, the School's dean had the discretion to revoke a student's admission to the Program for "other due and sufficient cause." Def. Local Rule 56(a)(1) Stat. at ¶ 26.

The School also offered to students who failed to complete the student teaching requirement a "B.S. Education Non-Certification" ("BSNC"), in which the students were awarded a B.S. in education without the School recommending them for state certification. Effective February 2002, the BSNC application process required students to file an application for the BSNC with the School's assistant dean, complete 130

hours of credit, and specify in writing their understanding that the application was irrevocable and that CCSU might not permit the student to apply for certification in the future. Def. L.R. 56(a)(1) Stat. at ¶ 30.

### C. Leone's Experience with the CCSU Program

Sometime in the spring of 2002, Leone submitted an application for the Program in order to formalize her admission. However, Leone claims that, at the time she applied for the Program, she had already been admitted by her advisor and then-chair of the art department, Prof. Cassandra Broadus-Garcia. Pl. L.R. 56(a)(2) Stat. at 44. According to Leone, Broadus-Garcia represented to Leone that she had the authority to enroll Leone in the Program. Broadus-Garcia allegedly waived the usual application process and assured Leone that she would not be affected by any changes in procedures or requirements for completing the Program. Pl. Opp. at 2.

On April 17, 2002, after reviewing Leone's application, Whitford requested a meeting with Leone to discuss Whitford's serious reservations about granting Leone admission into the Program. Whitford's concerns stemmed from Leone's pattern of confrontational behavior, misrepresentations, and inappropriate and threatening messages to School CCSU staff. After the meeting, Whitford informed Leone by letter dated May 31, 2002, that she had been admitted into the Program. Whitford's letter expressly warned Leone that, if Leone failed "to act in a professional manner," she would "be removed from both student teaching and the professional program." Pl. L.R. 56(a)(1) Stat. at ¶ 48.

In the Fall of 2002, Holly Hollander, the School's Acting Director of Field Experiences, assigned Leone to student teach at the John F. Kennedy School in

5

Windsor, CT, under the supervision of a cooperating teacher employed by the Kennedy School. Leone began her student teaching assignment on September 3, 2002. On September 12, 2002, the cooperating teacher reported to Hollander that, after the teacher suggested changes to a bulletin board that Leone had designed, Leone ripped down the bulletin board and left the Kennedy school. Either Hollander or the cooperating teacher refused to allow Leone to continue her student teaching position after the incident. Compare Pl. L.R. 56(a)(1) Stat. at ¶ 53 (stating that the supervising teacher told Hollander that she would not permit Leone to continue as her student teacher) with Def. L.R. 56(a)(2) Stat. at ¶ 53 (stating that Hollander told the supervising teacher not to allow Leone to continue her student teaching position).

On September 19, 2002, Hollander, Marshall, Hoffman, and Leone's student teaching supervisor held a meeting with Leone concerning the September 12th incident. Following the hearing, in a letter to Leone dated September 20, 2002, Hollander announced the group's conclusion that Leone's decision to leave her placement was inappropriate and unprofessional. Holland also informed Leone that they would not recommend her for another student teaching placement that semester. CCSU officially withdrew Leone from the student teaching placement sometime after the group's announcement. This decision prevented Leone from completing the necessary requirements for a B.S. with recommendation for certification.

In October 2002, CCSU provided Leone with an opportunity to obtain the twelve academic credits needed for a B.S. by completing independent study projects. Def.

L.R. 56(a)(1) Stat. at ¶ 64.[2]  One of these projects involved Leone composing a web banner design for a report by the National Council for the Accreditation of Teacher Education ("NCATE"), which was to be placed on the department's website.  Leone claims that Fafunwa and Roth authorized Marshall to tell Leone that she would receive a B.S. in art education with certification if she completed the independent study projects.  Pl. L.R. 56(a)(2) Stat. at ¶ 70.  Regardless, no competent evidence in the record establishes that Marshall, Roth, or Fafunwa had actual authority to modify CCSU requirements for a degree, or to promise or grant Leone a degree.  Def. L.R. 56(a)(1) Stat. at ¶¶ 73, 74.[3]

After Leone completed her independent study projects, CCSU granted her twelve academic credits.  Leone was then approached about submitting a BSNC application.  Leone refused to complete a BSNC application because she did not believe that the BSNC's waiver of her ability to receive a certification recommendation was part of the independent study agreement.  Sometime later, Leone complained that

---

[2] Without providing any dates, Leone asserts that she was initially approached by Richard Roth, the Associate Dean for Arts and Sciences, Marshall, and Fafunwa, the department chair and one of Marshall's supervisors, about setting up course work for which Leone would receive a B.S. in Education with a certification recommendation.  Pl. L.R. 56(a)(2) Stat. at ¶ 65. Leone claims these individuals told her that the degree was not a BSNC.  However, Leone admits that, by October 2002, CCSU was only providing an opportunity to complete the credits necessary for a BSNC.  See Pl. L.R. 56(a)(2) Stat. at ¶ 64.  Considering the tenor of Leone's arguments in opposition, the court assumes that Leone's admission is simply a mistake.  The court's assumption does not change the outcome in this case.

[3] Leone states that Marshall had "apparent authority," backed by Fafunwa and Roth's actions, to promise Leone a degree.  Pl. L.R. 56(a)(2) Stat. at ¶ 72.  Regardless of Leone's beliefs about the ability of Marshall, Fafunwa, or Roth to promise her a degree, Leone has not come forward with evidence outside her own deposition to rebut CCSU's contention that these individuals did not have discretion to set University policy with respect to degree requirements or fulfillment.  See id. at ¶ 72-74.

7

CCSU had misappropriated her intellectual property by posting her independent study work on the NCATE website.

At some point before November 7, 2002, Leone requested permission to repeat student teaching. On November 7, 2002, the Department of Teacher Education held a hearing regarding Leone's request. The department denied Leone's request after reviewing the materials she submitted for the hearing and conducting an extended discussion on the issue.

On December 5, 2002, Leone left a message on Whitford's office voice mail. Def. L.R. 56(a)(1) Stat. at ¶ 87. Later the same night, Leone called Whitford at home and spoke with Whitford directly. Whitford considered Leone's words to be threatening and was frightened by the call. The next day, Whitford reported Leone's call to the University police, as well as to her local police department. Whitford also claims to have learned from other sources that Leone had made similar contacts with employees at the John F. Kennedy School. On December 19, 2002, Whitford revoked Leone's admission into the Program.

On March 4, 2003, CCSU offered to allow Leone to apply for a BSNC without meeting the requirement of being readmitted into the Program. Leone rejected this offer and chose not to pursue a BSNC. Instead, Leone appealed the revocation of her admission to the Program in August 2003.

On October 31, 2003, CCSU held a hearing before a four-member committee to consider Leone's appeal. Whitford testified at this hearing, stating her opinion that, given the reports from Leone's former supervising teacher and various faculty and staff members about Leone's unprofessional conduct, Whitford could not recommend Leone

for certification as a teacher or to be readmitted into the CCSU professional educator program. Whitford submitted a number of materials supporting her opinion, in addition to Leone's application for the Program, academic transcript, letters of recommendation, and art department file. Slightly less than a week later, the committee recommended that Leone not be re-admitted into the Program. Paulette Lemma, CCSU's Vice President of Academic Affairs, upheld the committee's decision on November 24, 2003.

To date, Leone has not applied for a BSNC and wholly refuses to accept such a degree. Leone admits that the defendants' actions regarding her situation were consistent with university policies. Pl. L.R. 56(a)(2) Stat. at ¶ 118.

## III. DISCUSSION

### A. Substantive Due Process

The defendants have moved for summary judgement on the substantive component of Leone's due process claim, based on the argument that Leone has failed to establish a fundamental right to a university degree. When the defendants moved to dismiss Leone's substantive due process claim on a similar basis, the court denied the motion in order to allow Leone to develop a fuller record on the existence of a fundamental right. See Ruling on Motion to Dismiss, Doc. No. 3:05-cv-823 (JCH) at 6 (D.Conn. Aug. 3, 2006). With the benefit of a more complete record, the court concludes that Leone has failed to create a material issue of fact with respect to whether she has a fundamental right to the university degree she seeks.

As a preliminary matter, the court first must specify the fundamental right that Leone would have this court recognize. See Washington v. Glucksberg, 521 U.S. 702,

9

721 (1997)("[W}e have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest."). In Leone's Amended Complaint, she asserts that, "[t]he plaintiff has satisfied the requirements for a non-certified bachelor's of arts degree. The defendants, each of them have failed and refused to either grant her the degree, or to facilitate the granting of the degree." Amend. Compl. at ¶ 17 (Doc. No. 29). Judging by this allegation, Leone appears to claim that she has a fundamental right in receiving the BSNC. In response to the defendants' assertion that such a claim would be moot because they have already offered to grant Leone a BSNC, Leone shifts course. Now, Leone contends that, "the University has declined to ever offer the plaintiff the promised degree without waiver, as per the original agreement between the defendants and plaintiff." Pl. Opp. at 19. The court interprets this statement as an assertion that, having completed the academic credits necessary for a B.S. (either with or without certification) and having received promises from CCSU agents that she would receive a B.S. with a certification recommendation upon completing these credits, Leone possesses a fundamental right to a B.S. with a certification recommendation.

To determine if Leone's right to a B.S. with a certification recommendation is a fundamental one, the court must next determine whether the right Leone asserts is "deeply rooted in this Nation's history and tradition." Glucksberg, 521 U.S. at 721 (citing Moore v. East Cleveland, 431 U.S. 494 (1977)) (quotations omitted). To this end, the only authorities Leone cites to establish her right to a degree as deeply rooted are Galdikas v. Fagan, 342 F.3d 684 (7th Cir. 2003) and Branum v. Clark, 927 F.2d 698 (2d Cir. 1991). Neither of these cases supports Leone's contention.

In Galdikas, the Seventh Circuit addressed the question of whether there was a fundamental right to "an accredited graduate school education." Galdikas, 342 F.3d at 688. The Seventh Circuit found that, in addition to the fact that the neither Supreme Court nor the Seventh Circuit had recognized the right to a graduate school education, the Supreme Court had expressly held that the right to an education is "not among the rights afforded explicit protection" under federal law. Id. (quoting San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 34 (1973). Convinced that Rodriguez governed the outcome of the case before it, the Galdikas court concluded, "assuming, arguendo, that the defendants acted arbitrarily and irrationally, the plaintiffs' substantive due process claim still must fail because there is no independent constitutional violation." Id. at 691.

The Second Circuit's decision in Branum v. Clark is also not helpful to Leone's claim. Leone cites Branum for the proposition that New York law recognizes an implied contract between a university and its students which provides the basis for a property interest entitled to constitutional protection. Pl. Opp. at 11. Leone does not identify a similar recognition under Connecticut law. Moreover, in Branum, the "constitutional protection" contemplated by the Second Circuit appears to have been grounded in procedural, rather than substantive due process. See Branum, 927 F.2d at 705 (citing Perry v. Sindermann, 408 U.S. 593, 601-03 (1972), a procedural due process case, for proposition that plaintiff's property interest might warrant constitutional protection). The Second Circuit never addressed the question of whether an implied contract between a university and its students under New York law amounted to a fundamental right.

Leone clearly asks this court to break new constitutional ground by recognizing

11

her right to a degree *and* a recommendation for certification as fundamental. The Supreme Court instructs that the lower courts must be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. Harker Heights, 503 U.S. 115, 125 (1992). On the scant showing made by Leone in support of her claimed fundamental right, the court is unwilling to abandon this inherent reluctance. Leone's Opposition would essentially have this court recognize her right as fundamental merely because no other court has squarely held that the right is not fundamental. See Pl. Opp. at 10 ("This court should not be persuaded by the questionable precedent established by those courts who have found no fundamental right to the pursuit of a secondary education . . ."). Without more, the court cannot make such a logical and historical leap.

In addition to failing to establish her purported right to a particular type of university degree as deeply rooted in this nation's history, Leone has also not shown that CCSU has created a fundamental right "by placing substantive limitations on official discretion" through its policies. Olim v. Wakinekona, 461 U.S. 238, 249 (1983). Second Circuit precedent instructs that a plaintiff alleging that a state official has deprived her of a property interest in violation of substantive due process cannot prevail unless she can demonstrate a "clear entitlement" to the interest asserted under state law. Natale v. Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) (citing Walz v. Smithtown, 46 F.3d 162, 167-68 (2d Cir. 1995). Normally, a clear entitlement exists where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Waltz, 46 F.3d at 168 (quoting Yale

12

Auto Parts v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985). Courts determine the likelihood of an agency decision by assessing the amount of discretion granted to a particular agency. Thus, a clear entitlement may arise where a policymaker's discretion is "so narrowly circumscribed as to virtually assure conferral of the benefit" in question. RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989).

Assuming, *arguendo*, that the policies of a public university could create a fundamental property interest if they sufficiently tailored the discretion of university officials, CCSU's policies come no where near such a standard. It is undisputed that Whitford, as dean of the School, retained significant discretion in determining whether a student could enter or remain in the Program. Most significantly, Whitford could expel a student from the Program for conduct she deemed unprofessional or for "other due and sufficient cause." Whitford's authority in this regard precludes any contention that Leone had a clear entitlement to a B.S. with a certification recommendation, especially once Whitford determined that the totality of Leone's behavior warranted her removal from the Program.

Finally, even if the court is mistaken in holding that Leone does not possess a fundamental liberty interest in the degree she desired, the defendants' actions cannot reasonably be characterized as "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998). The court's authority to second guess CCSU's actions under substantive due process is extremely limited. Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985) ("Considerations of profound importance counsel restrained judicial review of the substance of academic decisions."). Indeed, the court may not

13

override the university's decision to prevent Leone from obtaining a B.S. "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Id.

While there may be a question as to whether Marshall, Fafunwa, and Roth exercised professional judgment if they actually promised Leone a B.S. with a certification recommendation, the same cannot be said of Whitford and CCSU's decision to remove Leone from the Program. The record unequivocally establishes that Whitford's authority as Dean over the Program overrode that of Marshall, Fafunwa, and Roth. Despite Leone's bald assertions to the contrary, there is no evidence that Whitford ever approved Marshall, Fafunwa, and Roth's alleged agreement with Leone. Also, there is no dispute that Leone has still not completed the Program's student teaching requirement, something she admits CCSU demands of all Program participants. Perhaps most significantly, Leone never claims that Whitford acted arbitrarily when she determined that CCSU should remove Leone from the Program, nor does she claim that CCSU acted irrationally in upholding Whitford's decision.

As Leone has not created a material issue of fact as to whether she has a fundamental right to a particular B.S., or as to whether the defendants' failed to exercise professional judgment in their dealings with her, the court grants the defendants' motion for summary judgment on Leone's substantive due process claim.

**B.     Procedural Due Process**

The defendants have moved for summary judgment on the procedural component of Leone's due process claim on the assertion that Leone cannot establish a significant property interest entitled to constitutional protection. Relying almost solely

on the Second Circuit's decision in Ezekwo v. NYC Health and Hospitals Corp., 940 F.2d 775 (2d Cir. 1991), Leone counters that she has adduced facts sufficient to support such a property interest. The court disagrees.

The United States Supreme Court and the Second Circuit have held that sources independent of the Constitution -- most often state law -- define property or liberty interests entitled to the protections of procedural due process. Ezekwo v. NYC Health and Hospitals Corporation, 940 F.2d 775, 782 (2d Cir. 1991) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A person has a property or liberty interest for due process purposes if there are rules or mutually explicit understandings that support her legitimate claim of entitlement to the interest. Id. Although not every contractual benefit rises to the level of a constitutionally protected property interest, Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir. 1987) (a simple contract dispute does not give rise to a cause of action under § 1983), the Supreme Court has recognized that every term of a contract need not be reduced to writing in order to form a constitutionally protected property interest. See Perry v. Sindermann, 408 U.S. 593, 602 (1972). Rather, an implied contract may result from a course of dealings between the parties that creates a protected interest. Id.

In Ezekwo, the Second Circuit held that the plaintiff had a significant and reasonable property interest in becoming a Chief Resident after completing her third year of residency as a physician. Ezekwo, 940 F.2d at 783. The plaintiff raised a procedural due process claim after the Columbia College of Physicians and Surgeons denied her the position of Chief Resident at Harlem Hospital Center ("HHC"). Id. at 782. Shortly before Ezekwo was to become Chief Resident, her clinical supervisors

15

switched the criteria for selecting a Chief Resident from automatic selection based on rotation to selection based solely on merit.  Id. at 784.  The new criteria prevented Ezekwo from becoming Chief Resident.  Id. at 779.  Prior to this change, the HHC had "adopted a policy and practice of awarding the position of Chief Resident to all third year residents on a rotating basis" which had become "an established practice which was expressly highlighted in HHC's informational documents."  Id. at 783.  The practice was in place before Ezekwo's admission into the medical program, and continued during her tenure.  Id.  Additionally, Ezekwo was verbally informed that she would assume Chief Resident position for a specified period.  Id.

Like Ezekwo, Leone alleges that, at various times, certain CCSU employees subordinate to Whitford informed her that she would obtain a B.S. with a certification recommendation after completing certain steps.  However, the similarities end there.  The record is clear that Leone's agreements with these subordinates - in particular, Broadus-Garcia's supposedly waiving the Program's admissions requirements and Marshall's offering Leone a B.S. with a certification recommendation after completion of the independent study project without completing a teaching assignment - were all exceptions to CCSU's adopted policies.  More importantly, it is also apparent that CCSU and Whitford retained the authority to override whatever agreements the School's subordinate officers were making with Leone.  Whitford required Leone to meet with her about Leone's admission to the Program after Broadus-Garcia allegedly waived the admissions requirements.  CCSU withdrew Leone from the Program after Leone left her student teaching assignment.  Indeed, the most important representation in this case occurred when Whitford explicitly informed Leone that Whitford would

16

remove her from the Program if she decided that Leone had acted in an unprofessional manner. This promise was fully realized when Whitford expelled Leone from the Program after Leone's calls to Whitford's office and home.

Put plainly, if Leone relied on a promise from Marshall that she could obtain the desired B.S. without completing a teaching assignment, and notwithstanding a finding by Marshal's dean that Leone had acted unprofessionally, such reliance was unreasonable. This is simply not a situation where the defendants' course of conduct and the plaintiff's reliance thereon "created a contractual right that rose to the level of a significant property interest . . . entitled to the protections afforded by the Due Process Clause." Ezekwo, 940 F.2d at 783. Therefore, the court grants summary judgment on Leone's procedural due process claim.

### C. Fifth Amendment Takings Claim

Leone claims that, when the defendants posted her design work on the NCATE website without granting her a B.S. with certification, the defendants violated the Takings Clause of the Fifth Amendment by appropriating Leone's intellectual property without just compensation. The defendants counter that this court cannot exercise jurisdiction over Leone's takings allegation because Leone has made no attempt to seek just compensation through any CCSU or state procedures available for providing just compensation.

While the defendants do not cite to any authority for the proposition that Leone must seek out CCSU or state procedures for just compensation before pursuing a takings claim in federal court, the court understands the defendants' argument as claiming that Leone's takings claim is not ripe. In Williamson County Reg'l Planning

17

Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court held that a Fifth Amendment takings claim is not ripe until the plaintiff had satisfied two requirements. First, the plaintiff must obtain a final decision regarding the property in question from the government entity charged with implementing the relevant regulations. Wiliamson County, 473 U.S. at 186 (the "finality requirement"). Second, the plaintiff must pursue the state's "reasonable, certain, and adequate" procedures for obtaining just compensation. Id. at 194 (the "exhaustion" requirement); see also Southview Associates, LTD v. Bongartz, 980 F.2d 84, 95 (2d Cir. 1992). Based on the record in this case, the court finds that, while Leone has availed herself of CCSU procedures for just compensation, her claim is not ripe because there is no evidence that Leone ever utilized the Connecticut state process for vindicating takings claims.

Leone argues that she has satisfied the first ripeness prong because she continued to seek admission into the Program in order obtain the B.S. with a recommendation for certification in compensation for her independent study work. CCSU denied her requests and appeals at each stage of the process. The defendants have not come forward with evidence specifying any other university procedures through which Leone could pursue a B.S. with a certification recommendation in compensation for her website work. Therefore, there is an issue of fact as to whether CCSU's refusal to readmit Leone into the Program constitutes a final decision on that matter.

Leone has not, however, fulfilled Williamson County's second requirement, because she has not ripened her claim by resort to Connecticut's process for obtaining just compensation. Connecticut's Constitution provides that "[t]he property of no person

18

shall be taken for public use, without just compensation therefor." Conn. Const. Art. I, § 11. While the nature of Leone's takings claim is somewhat unusual, the Second Circuit has held that a plaintiff must pursue a state court remedy "even where it 'remains unsure and undeveloped.'" Villager Pond, Inc. v. Darien, 56 F.3d 375, 380 (2d Cir. 1995) (quoting Southview Assocs., 980 F.2d at 99). Given that Leone can state a takings claim under Connecticut or federal law in a Connecticut state court, the Second Circuit requires that she test her just compensation claims in state court first. See id. ("[A]lthough no Connecticut case has been cited wherein compensation was provided for a taking like the one alleged here, Villager Pond is still required to look to the state for compensation before its takings claim will lie.") The court therefore grants the defendants' motion for summary judgment on Leone's takings claims.

### D. Leone's Remaining State Claims

As the court has entered judgment on Leone's federal claims for relief, it declines to retain jurisdiction over Leone's state law claims. 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment is GRANTED (Doc. No. 38). The defendants' Motion to Strike (Doc. No. 47) is DENIED. The clerk is hereby directed to close the case.

**SO ORDERED.**

Dated this 17th day of April, 2007, at Bridgeport, Connecticut.

                                       /s/ Janet C. Hall
                                      Janet C. Hall
                                      United States District Judge